Booth, J.,
delivered the opinion of the court:
The claimants, Lord & Hewlett, architects, bring this suit to recover damages for an alleged breach of contract. The *295 contract is not in writing. Its existence depends upon a sequence of events connected with the construction of the new building for the Agricultural Department. Congress, on March 2,1901, inserted the following provision in the general appropriation act, viz:
“ To enable the Secretary of Agriculture to have prepared, under his direction, plans for a fireproof administrative building, to be erected on the grounds of the Department of Agriculture, in the city of Washington, said plans, and such recommendations thereon as the Secretary of Agriculture may deem necessary, to be transmitted to Congress at its next regular session, five thousand dollars, to be immediately available.
“Approved, March 2, 1901.”
In pursuance of the above enactment the Secretary of Agriculture prepared and issued a programme of competition. The scheme adopted by the Secretary to secure said plans included the extension of invitations to ten leading American architects to enter said competition, the award to be made by a commission named therein, and the successful competitor’s plans to be submitted to Congress as the law provided. A nominal sum was named in the programme of competition as compensation for the efforts of the competitors, and the additional inducement of permanent employment was expressly proffered the successful architects in the event of subsequent legislation authorizing the construction of the building in accordance with said programme. The compensation in case of permanent employment was to be computed on the basis of the schedule of charges adopted by the American Institute of Architects. The Secretary of Agriculture was also expressly cautious to warn the competitors that the hope of future employment was entirely contingent; that the limitations in the act of March 2, 1901, marked definitely the scope of his authority in the premises, and he could only publish what he would do in the event of subsequent legislation adopting his procedure. The claim-. ants, having accepted the invitation to participate in the competition as aforesaid, prepared and submitted plans for the proposed building, and their plans were selected by the committee for transmission to Congress as the law provided.
*296 Nothing further was done until the passage of the act of February 9, 1903, providing as follows:
“AN ACT For tlie erection of a building for the use and accommodation of the Department of Agriculture.
“Z?e it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of Agriculture be, and he is hereby, authorized and directed to cause a suitable and commodious fireproof building, for the use and accommodation of the Department of Agriculture, including all of its Bureaus and offices now occupying rented quarters in the District of Columbia, to be erected on such portion of the grounds of the Department of Agriculture belonging to the United States as he may deem expedient, immediately in the vicinity of the present building, said building to be constructed in accordance with plans, to be procured, based on accurate estimates, providing for the erection of said building, complete in all of its details, as herein described, and within the total cost of not exceeding the sum herein stipulated, and he is hereby authorized, after procuring such plans, and after due advertisement for proposals, to enter into contracts within the limit of cost hereby fixed and subject to appropriations to be made by Congress, for the erection of said building complete, including heating and ventilating apparatus, elevators, and approaches, and the removal of the present building or buildings of the Department of Agriculture on said grounds.
“ Seo. 2. That the supervision of the construction of said building shall be placed in charge of an officer of the Government especially qualified for the duty, to be appointed by the Secretary of Agriculture, subject to the approval of the head of the department in which such officer is employed, who shall receive for his additional services an increase of twenty-five per centum of his present salary, such increase to be paid out of the appropriation for the building herein authorized.
“ Sec. 3. That the limit of cost for the construction of said building complete, including heating and ventilating apparatus, elevators, and approaches, and the cost for removal of the present building or buildings of the Department of Agriculture, is hereby fixed at one million five hundred thousand dollars, and no contract shall be entered into or expenditure authorized in excess of said amount.
“Approved, February 9, 1903.”
Immediately after the passage of the foregoing statute the Department of Agriculture entered into negotiations with *297 the claimants in reference to plans and specifications for the building provided therein. A most voluminous correspondence, together with several interviews looking toward the final adoption of some specific plan, passed between the parties. The termination of all negotiations and relations between the claimants and defendants occurred in May, 1903, and at a time when no agreement had been reached as to what plans would be adopted. The final rupture arose over the terms and conditions of a written contract submitted to the claimants by the department covering their services as architects in the construction of the building. The contract mentioned provided a fee of 3-J per cent of the sum expended for the building as claimants’ compensation, and also for supervision of construction of the building by Captain Sewell, who had been appointed by the Secretary for that purpose. To both of these provisions claimants declined to yield, asserting at the time the existence of a contract in accordance with the terms and conditions of the programme of competition into which they had entered, received the award, and which the Congress had recognized by the act of February 9, 1903; that subsequent to the passage of said act claimants had been recognized by defendants as the regularly employed architects for that purpose, and nothing remained to be done except the execution of a contract in strict accord with said former proceedings.
The act of March 2, 1901, is advisory in character. It is difficult to see how a contract obligating the defendants for the payment of any sum in excess of $5,000 could be predicated thereon. Discretion was allowed the Secretary as to the manner of securing plans, but absolutely none as to the amount to be expended. The Secretary recognized the limitations of the act in express words, and even without such notice the claimants were obligated to know the law. The language of the act is exceedingly circumspect. The Congress reserved the right to pass upon the plans and specifications when submitted, the question of their availability, the amount required to carry them into execution, and all the details of the transaction were withheld from the Secretary. The inducements engrafted into the programme of competí *298 tion as to future permanent employment by the Secretary were ultra vires. True, the Congress could by subsequent and independent legislation ratify the proceedings of the Secretary in the premises, and thereby obligate the defendants for their faithful performance, but this was not done. After a lapse of nearly .two years, the Congress passed the act of February 9, 1903. Aside from the identity of the subject-matter of the legislation, the two statutes are entirely dissimilar. The act of 1903 makes no reference to former proceedings, mentions no plans or specifications, and, in fact, in express terms directs the erection of the building “ in accordance with plans to be procured, based on accurate estimates.” The act of 1903 authorizes a building, makes appropriation therefor, and confers plenary power and authority on the Secretary to carry it into execution. It is independent legislation, including within its scope only such power and authority as its express terms provide.
As a matter of fact the claimants herein, in response to the programme of competition, had submitted elaborate plans calling for the construction of a monumental structure, estimated to cost $2,500,000. Is it not apparent from the amount appropriated by the act of 1903 that the previous efforts of the Secretary had not been ratified ? The passage of the act of March 2, 1901, and the proceedings had thereunder, constituted one transaction. The passage of the act of February 9, 1903, and the proceedings thereunder, was likewise a distinct transaction. They were not in anywise in ■pari ma-teria. The defendants incurred no obligations under the act of 1901 which were continued in virtue of the act of 1903. The continuity of the proceedings were interrupted, and that which had gone on previous to the act of 1903 was effectually closed as a separate transaction by the passage of the later act. What occurred subsequent to the passage of the act of 1903 was negotiation. The Secretary fully recognized the eminent ability of the claimants, and was apparently desirous of securing their services. At no time up to the time of the final severance of their relations had there been an agreement as to plans or specifications, much less as to employment. Claimants’ refusal to finally accede to written *299 contract proffered for their employment was based as much upon professional ethics as quantum of compensation. The act of 1903, under which the Secretary was bound to proceed, especially provided for the supervision of the construction of said building by an officer of the Government to be appointed by the Secretary. Just what is meant by the term “ supervision ” in the act it is unnecessary to determine. The provisions for his appointment were mandatory, no contract failing to provide as the act commanded could have been executed, and the claimants declining to accept the terms and conditions of such a contract terminated their relations with the defendants.
The questions involved, being almost wholly ones of fact, the court has not deemed it necessary to cite authorities upon the elementary principles of law governing their application.
We are unable to reach any other conclusion than that the petition should be dismissed.
Petition dismissed and judgment ordered for the defendants.